# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RCI TM CORP. and RCI, LLC,**

                **Plaintiff,**

**-vs-**                                              **Case No.  6:13-cv-945-Orl-22DAB**

**R&R VENTURE GROUP, LLC, POINT
RENTAL LIQUIDATORS, LLC,
BRANDON J. COOKE and EXCESS
PROPERTY SOLUTIONS, LLC,**

                **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **[CORRECTED] MOTION FOR FINAL DEFAULT JUDGMENT AGAINST BRANDON J. COOKE, EXCESS PROPERTY SOLUTIONS, LLC, POINT RENTAL LIQUIDATORS, LLC, R&R VENTURE GROUP, LLC (Doc. No. 79)** |
| **FILED:** | **October 3, 2014** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part as to the injunctive relief and **DENIED** as to attorney's fees.

       Plaintiffs, RCI TM Corp. and RCI, LLC, (collectively "RCI") filed a Complaint against

several Defendants for improper use of RCI's trademarks. Doc. 1. RCI now moves for a final default

judgment pursuant to Federal Rule of Civil Procedure 55(a) against four of the Defendants:  R&R

Venture Group, LLC ("R&R"), Point Rental Liquidators, LLC (PRL), Excess Property Solutions,

LLC ("EPS"), Brandon J. Cooke ("Cooke"), (collectively the "Defendants")[1].  RCI previously

obtained entries of default against Defendants, when they failed to respond to the Complaint and

withdrew an answer.  RCI now moves for final default judgment against the Defendants seeking a

permanent injunction and an award of attorney's fees.  Because the Court finds final default judgment

to be proper, it is respectfully **RECOMMENDED** that the Motion for Final Default Judgment be

**GRANTED in part** and **DENIED** as to attorney's fees.

## I. *Procedural History*

On June 18, 2013, RCI filed a Complaint against Defendants for trademark infringement,

unfair competition, and deceptive and unfair trade practices in using RCI's trademarks in selling

Defendants' timeshare products. Doc. 1. Defendants Brandon Cooke and EPS were served with the

Complaint on July 24, 2013; Defendant PRL was served on September 3, 2013. Docs. 29, 30, 45.  All

three of these Defendants failed to respond to the Complaint.  RCI moved for entry of defaults against

EPS, Cooke, and PRL, which the Clerk entered against EPS and Cooke on September 23, 2013 and

against PRL on October 1, 2013.  Docs. 44, 51.

The fourth Defendant, R&R, was served with the Complaint on June 24, 2013, and filed its

Answer and Affirmative Defenses on August 14, 2013. Doc. 8, 33.  On September 4, 2014, the Court

struck the pleadings of Defendant, R&R, and entered a default as a sanction pursuant to Federal Rule

of Civil Procedure 37 for R&R's violation of the Court's July 29, 2014 Order compelling the

appearance of R&R's Rule 30(b)(6) Corporate Representative at deposition.  The Court had ordered

R&R to designate a Rule 30(b)(6) corporate representative by August 6, 2014 and to make the

representative available to be deposed by August 20, 2014, cautioning R&R that it would "be subject

---

[1]Two other Defendants, Vacation Service International, LLC and Joshua Fazenbaker, were dismissed on September 27, 2013 when the parties filed a Joint Stipulation of Settlement and Dismissal with Prejudice; Chief Judge Conway entered a permanent injunction by consent against them and RCI's claims against them were terminated.  Docs. 47, 48.

to sanctions, including the possibility of entry of default if the corporate representative fails to appear." Doc. 64.  Although R&R's counsel timely notified RCI's counsel by email of the corporate representative's designation and availability to appear for the deposition, the representative failed to appear for the deposition.  Doc. 70.

When R&R's counsel subsequently moved to withdraw, the Court entered an Order denying the motion, but advising R&R that "the continued failure to cooperate with counsel may cause the company to suffer the consequences of compromised legal representation, and may result in a having a default judgment entered against the company." Doc. 69.  RCI moved for sanctions on August 20, 2014 (Doc. 70); R&R conceded in its response that it had ceased operating as a business as of August 2014 and it was "unable, due to lack of funds, to cause its corporate representative to appear for a deposition on August 19, 2014, and will not be able to afford to attend mediation of this matter, or to continue to pay counsel to defend it in this matter."  Doc. 74 ¶ 5.  "For that reason, and in consideration of the fact that R&R Venture Group is no longer operating, and has no appreciable assets, Defendant hereby agrees to a withdrawal of its answer in this matter and that the Clerk of the Court may enter a default against R&R Venture Group, LLC" Doc. 74 ¶ 6.  On September 4, 2014 the Court granted Plaintiff's Motion for Sanctions, striking R&R's pleadings and directing the Clerk to enter default against R&R.  Doc. 75.

On October 3, 2014, RCI filed its Motion for Default Judgment against the remaining four Defendants[2].  Doc. 79.  On October 6, 2014, Chief Judge Conway ordered RCI to mail copies of the Motion and the supporting documentation to the defaulted Defendants at the address where process was served and then file a certificate with the Court; RCI complied on October 7, 2014.  Doc. 80, 81.

## II. *Applicable Law of Service of Process and Defaults*

---

[2]The Motion was referred for issuance of a Report and Recommendation on October 28, 2014.  Doc. 83.

RCI seeks a final default judgment on Counts I to IV of the Complaint – federal trademark infringement (Count I), federal unfair competition (Count II), common law unfair competition (Count III), and Florida Deceptive and Unfair Trade Practices (Count IV) – and abandoning its claim for relief for Count V, tortious interference. Before the court may enter a final default judgment, the clerk must enter a default when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a); *see also Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.*, 803 F.2d 1130, 1134 (11th Cir. 1986) ("Rule 55 applies to parties against who affirmative relief is sought who fail to 'plead or otherwise defend'" (citation omitted)).   Notwithstanding the entry of default by the clerk, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Constr. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).   Therefore, the court must evaluate whether it is proper to enter a default judgment.   "A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, and is barred from contesting on appeal the facts thus established.'"   *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citations omitted).   RCI obtained defaults against three of the four Defendants when they failed to respond to the Complaint, and against the fourth when it withdrew its answer.

The Court must confirm that the defaulting Defendants were properly served under the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 4(e)(2)(B) allows service on an individual by leaving a copy of the summons and complaint at the defendant's dwelling or usual place of abode with someone of suitable age and discretion who resides there.   Fed. R. Civ. P. 4(e)(2)(B).  Alternatively, under Rule 4(e), service is accomplished by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made or by delivering a copy to an agent authorized by appointment or by law to

receive service of process.   Fed. R. Civ. Pro. 4 (e).  Defendant Brandon Cooke, residing in Morris, Illinois, was personally served with the Complaint, on July 24, 2013.  Doc. 29.

Under Federal Rule of Civil Procedure 4(h)(1), service on an unincorporated association such as an LLC may be effected pursuant to the law of the state in which the organization is located or by delivering summons to an officer, managing or general agent or one authorized by statute to receive service.  RCI served both Excess Property Solutions, LLC, an Illinois limited liability company[3], and Point Rental Liquidators, LLC, a dissolved Nevada limited liability company, in Illinois[4]. The Illinois Limited Liability Company Act ("ILLCA") sets forth the requirements for service on a limited liability company. 805 Ill. Comp. Stat. Ann. 180/1–50 (requirements for service). For a foreign limited liability company, such as PRL, organized in a state other than Illinois – *i.e.,* Nevada – assuming it was doing business in Illinois, process as to the company "shall be served either upon the registered agent appointed by the limited liability company or upon the Secretary of State as provided in this Section." *Id.* 180/1–50(a); *see also id.* 180/45–55 (providing that rules for service apply to foreign limited liability companies).  *See Chicago Reg'l Council of Carpenters v. Joseph J. Sciamanna, Inc*., No. 08 C 4636, slip op. at 11, 2009 WL 1543892, at *5 (N.D.Ill. June 3, 2009). ("Under Illinois law, process on a limited liability company must be served upon the company's registered agent or upon the Illinois Secretary of State if the company does not have a registered agent in the State."); *cf. Arbitron, Inc. v. Marathon Media, LLC*, No. 07 Civ.2099(DC), 2008 WL 892366, at *4 (S.D.N.Y. Apr.1, 2008) (applying Illinois rule for service on private corporation to service on limited liability company).

---

[3]Excess property Solutions, LLC was involuntarily dissolved on April 11, 2014.  *See* www.ilsos.gov; Doc. 78-8 at 65.

[4]Although RCI submitted a thorough memorandum of law, it did not address this specific issue.

Defendant Excess Property Solutions, an Illinois limited liability company, was served with the Complaint on July 24, 2013 via service on the registered agent, Shayne Lowe.  Doc. 30.  Brandon Cooke is the managing member of PRL, which is a dissolved Nevada limited liability company (*see* Doc. 1 ¶ 6); on September 3, 2013, service on Defendant PRL, was made on a putative "authorized employee," Courtney Menal, at 1841 Anne Drive, Apt. D, Morris, Illinois.  Doc. 45.  All three of these Defendants failed to respond to the Complaint.  RCI moved for entry of defaults against EPS and Cooke on September 23, 2013 and against PRL on October 1, 2013, and the Clerk entered defaults against them immediately. Docs. 44, 51.

Service on Defendant Excess Property Solutions, was done via service on the registered agent, Shayne Lowe, and complies with the Illinois statute.  Doc. 30; Doc. 78-8 at 65. However, at first blush, it appears that service on Point Rental Liquidators, LLC, did not comply with the requirements of service under the Illinois statute governing service of process for LLCs because service was made on an individual described as only an "authorized employee."  Doc. 45.

According to the Nevada Secretary of State, Rental Point Liquidators, LLC's registered agent is Red Rock Corporate Solutions, LLC in Las Vegas, Nevada and its managing member is Brandon J. Cooke of Las Vegas, Nevada.  *See* http://nvsos.gov; Doc. 78-8 at 62.  Service was made on the putative "authorized employee" (of a *dissolved* Nevada company) in Illinois does not appear to comply with the ILLCA statute's service requirements.  However, the managing member of Point Rental Liquidators, LLC, Brandon Cooke, was personally served with the Complaint.  Under Federal Rule of Civil Procedure 4(h)(1), service on an LLC may be effected by delivering summons to an officer, managing, or general agent; thus, service of the Complaint on Brandon Cooke the managing member, listing the claims against PRL, was effective service of process, regardless of whether it was also served on someone else.

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002); *DirecTV, Inc. v. Griffin*, 290 F.Supp.2d 1340, 1343 (M.D. Fla. 2003). RCI contends that it meets the procedural requirements for obtaining a default judgment against the Defendants in that the Court has federal question jurisdiction over RCI's claims under the Trademark Act of 1946 as amended, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act") and over their state-law claims through supplemental jurisdiction, citing 28 U.S.C. § 1331, 28 U.S.C. § 1367; Doc. 1.

### III. *Permanent Injunction*

The Court finds that Defendants' failure to timely respond to the Complaint and subsequent entry of default against them served to admit the well pleaded allegations of the Complaint, including that Defendants' infringement of RCI's trademarks was willful. *See, e.g.*, *Buchanan v. Bowman,* 820 F.2d 359 (11th Cir. 1987) (in defaulting, defendants "admit the plaintiff's well-pleaded allegations of fact."); *see also See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir. 2009) (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, the plaintiff must show (1) that it possesses a valid mark, (2) that the defendant used the mark, (3) that the defendant's use of the mark occurred in commerce, (4) that the defendant used the mark in connection with the sale or advertising of any goods, and (5) that the defendant used the mark in a manner likely to confuse consumers. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). The analysis of a Florida common law unfair competition claim is the same as under the Lanham Act. *See Maurer Rides USA, Inc., v. Beijing Shibaolia Amusement Equip. Co., Ltd.*, Case.

No. 6:10-cv-1718-Orl-37KRS (M.D. Fla. May 30, 2012); *see also Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1257 n.7 (M.D. Fla. 2009).

For an unfair competition claim under 15 U.S.C. § 1125(a), the plaintiff must show that (1) it had trademark rights in a mark or name and (2) that the defendant had adopted a mark or name that was the same, or similar enough that consumers are likely to confuse the two. *Suntree Techs., Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1348 (11th Cir. 2012). Facts sufficient to establish a claim of trademark infringement under 15 U.S.C. § 1114 are sufficient to establish a claim of unfair competition under 15 U.S.C. § 1125. *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994).

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") protects "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.202(2). A practice is unfair if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003). Trademark infringement and unfair competition are considered to be unfair and deceptive trade practices in violation of FUTPA. *See, e.g., Laboratorios Roldan v. Tex Inc.*, 902 F. Supp. 1555, 1569-70 (S.D. Fla. 1995) (explaining that intentionally palming off or passing off products is the type of behavior that FUTPA prohibits); *Big Tomato v. Tasty Concepts, Inc.*, 972 F. Supp. 662, 664 (S.D.Fla.1997) (FUTPA provides for injunctive relief against continued trademark infringement). Thus, RCI contends, the strength of its FDUTPA claim rises or falls on the success of its Lanham Act claim. *See Suntree Tech., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d. at 1279.

Because default has been properly entered against Defendants, they are deemed to have admitted the allegations made in RCI's Complaint. *See* Doc. 1. RCI is the global leader in vacation

exchange, and provides its global community of more than 3.6 million timeshare owners worldwide with quality vacation experiences at more than 4,000 resorts in over 100 countries through RCI® Weeks and RCI Points® timeshare exchange networks.   Doc. 1 ¶ 15. A timeshare is a form of vacation property ownership in which the owner has a deeded interest in, or non-deeded right to use, accommodations at a resort or group of resorts for a designated recurring period of time.  *Id.* ¶ 22. Timeshare developers sell vacation ownership interests typically in either one-week intervals or as packages of "points" that can be used to reserve accommodations at the owner's "home resort" or related group of resorts, and such points are units of measure used by a developer as a basis for determining a timeshare owner's occupancy rights at such developer's resort accommodations during a particular year. *Id.* ¶ 23.  Timeshare exchange companies, such as RCI, provide a vacation exchange network which allows timeshare owners to exchange their vacation ownership interests to make reservations at a variety of affiliated resorts, rather than the just the home resort and related group of resorts. *Id.* ¶ 24.  RCI operates two main exchange networks: RCI® Weeks and RCI Points®-in which RCI members may exchange vacation ownership interest use rights with other RCI members within the applicable network. *Id.*

Plaintiff RCI TM is the owner of various trade names and service marks, including, but not limited to RCI® and RCI Points®, logos, and derivations and formatives thereof (collectively, the "RCI Marks"). Doc. 1 ¶ 14, Doc. 1-1.  Through an exclusive licensing agreement with RCI TM, RCI has continuously used the highly distinctive RCI Marks to market and sell its vacation ownership exchange network throughout the United States and the world.  Doc. 1 ¶ 16.  Plaintiffs and/or their predecessors have continuously used the RCI Marks in commerce since at least as early as the date of their registration, and these marks are in full force and effect. Additionally, several of the RCI Marks have achieved "'incontestable status" pursuant to 15 U.S.C. § 1065.  Doc. 1 ¶ 17.

RCI contends that these Defendants have concocted an unlawful scheme to profit from the goodwill and reputation of the highly distinctive RCI Marks. Doc. 1 ¶ 31.  Specifically, Defendants are using the RCI trade name and trademarks in connection with the marketing of their purported "timeshare enhancement programs," as well as their timeshare exchange, sales, and rental programs, all without with the authorization or permission of RCI.  *Id. ¶* 32.

According to Melinda Kelsey, a Customer Communications Legal Liaison in the RCI Indianapolis Customer Service Department, R&R is the latest corporate creation of Nonna and Robert "Guy" Russell. Doc. 78-1 ¶¶ 1, 10.  In 2009, RCI began receiving nearly identical complaints regarding a Nevada company called Global Destination Consulting, Inc., also controlled by the Russells. *Id.*  After filing suit in the United Sates District Court for the District of Nevada against GDC in October 2009, RCI obtained a Final Consent Judgment and Permanent Injunction against the Russells and their company.  Doc. 78-2. RCI alleges that the Russells have begun a similar scheme.

In 2012, RCI started receiving numerous complaints from RCI members who have been contacted by purported representatives of "RCI" or an affiliate.  Doc. 78-1.  Since 2012, RCI has received over 175 complaints from RCI members regarding solicitations from R&R, EPS, PRL, Brandon Cooke and have lodged complaints with RCI, inquiring as to the affiliation between the Defendants and RCI.  *Id*. ¶ 8.

Ms Kelsey summarized the complaints – demonstrating the RCI Members' confusion – as following a similar pattern: The RCI member receives a telephone call from someone claiming they are from "RCI," otherwise falsely affiliating himself or herself with RCI, inviting the Members to so-called "RCI Update" meetings at local restaurants under the auspices of describing major changes to the programs offered by RCI, including RCI exchange programs; in many instances the caller ID on the RCI member's telephone displays "RCI PTS GLH," which further adds to the confusion.  Doc. 78-1 ¶ 5. At the "RCI Update" meetings, RCI members are told one or more of the following: (1) RCI

is reorganizing to an all points system and that RCI Weeks will have to be converted to RCI Points®~ (2) RCI will only offer and honor RCI Points; (3) RCI is launching a new RCI Points Premier program that RCI Members could use at other timeshare resorts not affiliated with RCI; (4) RCI Members enrolled in the RCI Points Premier program could sell their unused points to PRL for 7.5 to 8.5 cents per point; and (5) RCI is making imminent changes to its exchange programs that would adversely affect the RCI Members' interest unless the RCI Members purchase the products being offered or otherwise marketed by, among others, Excess Property Solutions, LLC, and Points Rental Liquidators, LLC. A number of the complaints stated that the sales person making the presentation was named Brandon J. Cooke. *Id.* ¶ 6.

RCI has also submitted the Declarations of several of RCI Members, Adele Crown, Mary Mozingo, Mary Olson. Doc. 78-5, 78-6, 78-7. These RCI Members describe how, at the conclusion of these sales meetings hosted by Defendants EPS, PRL, and Cooke, RCI members were offered the opportunity to purchase a "timeshare enhancement package," under which they would purchase on average 140,000 points, and to sell a portion of those points EPS or PRL. Doc. 78-1 ¶ 7. The RCI members were advised that after approximately 180 days, they would receive a check from EPS or PRL for an amount in excess of the program's purchase price, which ranged from approximately $8,000 to $9,800; payment could be made by either personal check or a credit card. *Id.* Such payments were made to R&R Venture Group, LLC[5], with a separate smaller payment made to Vacation Services International, LLC. *Id.* The RCI member never received the promised payment after the expiration of the 180 day period. *Id.*

The RCI members who complained to RCI either erroneously believed that there was some affiliation between RCI and R&R, EPS, PRL, and/or Cooke and/or were otherwise left with a negative impression of RCI because of the unsolicited telephone call they received, and in the cases in which

---

[5]More recently consumers made payments to Cornerstone Processing, which is not a defendant in the case.

they purchased "timeshare enhancement packages" timeshares, other vacation products and credit cards for which they did not receive the represented product or service, or payment. *Id.* ¶ 8.  Ms. Kelsey provided RCI business records containing the complaints from seventeen RCI Members reporting the unauthorized solicitations to RCI Members from Defendants (in addition to the Declarations listed above).  Doc. 78-1.

### IV. *Proposed Injunction*

RCI contends that the Defendants' conduct, if not enjoined, will continue to irreparably damage its valuable trademark rights, and will continue to deceive consumers into believing there is an affiliation between RCI and Defendants, when, in fact, there is none.

RCI is entitled to injunctive relief to prevent any future infringement of its trademarks.  The Lanham Act permits the issuance of permanent injunctions to prevent future violations. 15 U.S.C. § 1116.  Courts have the authority to grant permanent injunctions under the Lanham Act, provided that the plaintiff demonstrates that (1) it has suffered an irreparable injury; (2) the remedies available at law are inadequate compensation; (3) a remedy in equity is warranted, considering the hardships imposed on the defendant and the plaintiff; and (4) a permanent injunction would not be contrary to the public interest. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

RCI has established the necessary elements for a permanent injunction in its Complaint.  The Eleventh Circuit has noted that trademark infringement by its nature often results in irreparable harm and that there is generally no adequate remedy at law.  *Tally-Ho, Inc. v. Coast Comm. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989).  Irreparable injury has been determined to include "loss of control of reputation, loss of trade, and loss of goodwill." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)).  RCI need not introduce evidence of threats of future harm when the Defendants

have willfully infringed a plaintiff's trademarks. *See Polo Fashions, Inc. v. Dick Bruhm, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986); *Vuitton Et Fils, S.A. v. Crown Handbags*, 492 F. Supp. 1071, 1077 (S.D. N.Y. 1979) ("mere possibility of infringement is sufficient to warrant a permanent injunction"), *aff'd*, 622 F.2d 577 (2d Cir. 1980).

As RCI argues, its trademark rights have been infringed and RCI undeniably would be prejudiced absent the entry of permanent injunctive relief, otherwise, Defendants will continue to market their timeshare programs and services to consumers that mistake Defendants' programs and services with those of RCI.  Doc. 79 (citing *Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d at 1110, 1116 (S.D. Fla. 2007) (citing *PepsiCo, Inc. v. Reyes*, 70 F. Supp.2d 1057, 1060 (C.D.Cal.1999) (trademark infringement and unfair competition by their very nature result in irreparable injury because of the attendant loss of goodwill, reputation and business)); *see also United States v. Kahn*, 164 Fed. Appx. 855, 858-59 (11th Cir.2006) (granting injunction where facts established by default found to warrant such a remedy); *Sony Music Entertainment v. Global Arts Productions*, 45 F. Supp.2d 1345, 1347 (S.D.Fla.1999) (granting injunction in copyright infringement case by default after finding that plaintiff had established elements necessary for injunctive relief)).

As RCI has demonstrated, the RCI Members have repeatedly assumed, and the general public are likely to assume, that Defendants are affiliated with RCI due to Defendants' use of RCI's marks and logos. RCI therefore has lost control of its reputation and the goodwill associated with its marks. RCI has shown a likelihood of success on the merits on its claims for federal trademark infringement (Count I), federal unfair competition (Count II), common law unfair competition (Count III), and Florida Deceptive and Unfair Trade Practices (Count IV).

As RCI has argued, absent the entry of a permanent injunction, RCI's goodwill will be irreparably harmed by the Defendants' continued marketing and sale of their timeshare programs and services that are mistaken for RCI's programs and services, and result in a detriment to RCI's

goodwill. *See Pepsico Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d. 1110, 1116 (S.D. Fla. 2007).   RCI argues that remedies at law cannot adequately redress Defendants' continued infringement and, without a permanent injunction, Defendants will continue to utilize the RCI Marks in connection with the marketing and sale of their timeshare programs and services, and RCI will have no other recourse against Defendants.

Three of the Defendants did not respond to this lawsuit; the fourth withdrew its Answer after failing to cooperate in discovery.  Legal remedies are inadequate to redress Defendants' continued infringement, and, without a permanent injunction, Defendants will continue to unlawfully utilize RCI's trademarks and logos in connection with their sales representations. RCI will have no other recourse against Defendants.  As to R&R, which is controlled by Nonna and Robert "Guy" Russell who previously controlled the Nevada company called Global Destination Consulting, Inc., RCI has demonstrated that the infringement continued despite the prior injunction entered in Nevada.  This supports a finding that Defendants would continue to violate RCI's trademark rights in the future.  The balance of hardships and the public interest also favor a permanent injunction. A permanent injunction prohibiting the use of RCI's marks and logos in connection with Defendants' businesses will not harm the Defendants, and RCI members and the general public will benefit by eliminating any confusion about Defendants' affiliation with RCI.

It is respectfully **RECOMMENDED** that the Proposed Injunction (Doc. 79-1) be entered, with one significant exception to the injunction language – the District Court should specifically enjoin only the four Defendants and exclude the long list of R&R's current and former employees, as previously identified in R&R's Answers to Interrogatories[6] and other entities because there is no evidence that these individuals received notice of the suit. Moreover, the language of the Proposed Injunction sufficiently enjoins Defendants and all of their "respective officers, directors, *employees*,

_____

[6]Rodriguez Declaration, Doc. 78-8 at 52-57.

representatives, shareholders, brokers, *salespersons, independent contractors, agents*, assigns, attorneys and *any persons* in active concert and participation with them."  Doc. 79-1 at 4.

## V. *Attorney's Fees*

RCI seeks entitlement to attorney's fees for the prosecution of its claims against the Defendants.  15 U.S.C. § 11177(b).  Under Section 35(a) of the Lanham Act, courts may award reasonable attorney fees to the prevailing party "in exceptional cases." 15 U.S.C. § 1117(a); *Montgomery v. Noga*, 168 F.3d 1282, 1304 (11th Cir. 1999). Recently, the measure of "exceptional cases" has changed.  As the Court explained recently in denying attorney's fees in another trademark case, *BMW of North America LLC v. Ismail Cuhadar*, Case No. 6:14-cv-40-Orl-37DAB, 2014 WL 5420133 (M.D.Fla. July 10, 2014), the law in this area changed in April 2014.  This circuit had previously held that exceptional cases were those where the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner," *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1205 (11th Cir. 2001) (reversing fee award that lacked sufficient factual findings); *citing Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (quoting 1974 U.S.C.C.A.N. 7132, 7133).  On April 29, 2014, however, the Supreme Court interpreted identical language in the patent context, and found that the word "exceptional" should be interpreted in accordance with its ordinary meaning:

> We hold, then, that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, _U.S. _, 134 S.Ct. 1749, 188 L.Ed 2d 816, No. 12-1184, slip op. at 7-8 (U.S. April 29, 2014); *see also Highmark Inc. v. Allcare Health Management System, Inc.*, _ U.S._, 134 S.Ct. 1744, 188 L.Ed. 2d 829 (U.S. April 29, 2014) (*Octane* holds "that the word "exceptional" in § 285 should be interpreted in accordance with its ordinary meaning.").

Although the instant case arises under the Lanham Act and *Octane* is a patent case, in *Octane,* the Supreme Court cited with approval the case of *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant*, 771 F.2d 521, 526 (C.A.D.C. 1985) (Ginsburg, J., joined by Scalia, J.), noting that it "interpret[ed] the term 'exceptional' in the Lanham Act's identical fee-shifting provision, 15 U.S.C. § 1117(a), to mean "uncommon" or "not run-of-the-mill.'" 134 S. Ct. at 1756.  As such, the Court finds the *Octane* analysis to be applicable in interpreting the identical provision at issue here.

The Eleventh Circuit definition of exceptional required an affirmative finding of bad faith or deliberate or willful conduct in order to justify fees.  The relatively few cases interpreting *Octane* to date note that the post-*Octane* fee inquiry is "less rigid and more holistic." *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11–CV–6635–LHK, 2014 WL 2508386, *6 (N.D. Cal. June 3, 2014) (denying motions for fees). "Under the new standard, no bright-line rules define the parameters of what is exceptional, and no single element (such as baselessness or sanctionability) is dispositive.  Rather, the inquiry requires the Court to consider a totality of the circumstances and to exercise its equitable discretion." *Id.; see Intellect Wireless, Inc. v. Sharp Corporation*, No. 10 C 6763,  2014 WL 2443871, *5 (N.D. Ill. May 30, 2014) ("The court recognizes, however, that insofar as the imposition of fees under Section 285, even after *Octane Fitness*, remains an exception to the American Rule, the standard for finding a case exceptional befits its definition—"uncommon," "rare," or "not ordinary.'").  Under *Octane,* a case is exceptional if it *stands out from others* 1) with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or 2) the unreasonable manner in which the case was litigated.

Here, unfortunately, RCI relies on cases which predate the April 2014 *Octane* decision and does not address the factors from *Octane*.  Doc. 79 at 13 (citing *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (quoting *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989), *and Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675

F.2d 1160, 1169 (11th Cir. 1982)); *Pet-Med Express v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004)). RCI cites the pre-*Octane* case of *Pet-Med Express v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1223 (S.D. Fla. 2004), in which the defendants defaulted on claims of willful infringement and refused to comply with a court order. As this Court has previously recognized:

> [M]any courts, including the undersigned, have cited *PetMed* as authority for awarding fees to prevailing Plaintiffs in a default case. *See, e.g., Sigel v. Interplay Entertainment Corp.,* No. 6:06-cv-135-Orl-31DAB, 2007 WL 601613 (M.D. Fla. Feb. 21, 2007). Upon reflection and after consideration of *Octane*, the Court believes this reliance is no longer appropriate. *PetMed* relied on the Eleventh Circuit standard of defining exceptional as malicious, fraudulent, deliberate and willful cases. That standard appears to be modified by *Octane.*

*BMW*, 2014 WL 5420133 at *5.

RCI argues that this is an exceptional case warranting an award of attorney's fees because by failing to answer the Complaint, Defendants EPS, PRL and Cooke admit that they acted deliberately, willfully and wantonly, and the withdrawal of R&R's Answer and Affirmative Defenses is likewise an admission of similar intentional misconduct. RCI also argues, as to R&R, who failed to cooperate in discovery, that R&R frustrated RCI's efforts to complete discovery in this case, even when directed by this Court to do so. The Court does not find that such conduct is enough to constitute "exceptional" conduct. As the Supreme Court has stated: "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane,* 134 S.Ct. at 1756. Applying that discretion here and considering the totality of the circumstances, the Court does not find that a fee award is warranted.

Three of the Defendants in the suit did not Defendants litigate the case in an unreasonable manner because they did not litigate the case at all. The conduct of Defendants in ignoring the demand letters and the Complaint was willful, however, the Court concludes that making a conscious choice to default is not enough to take this case out of the run of the mill category. The failure to respond to demand letters, and the failure to respond to the lawsuit led to losing the case. "While this

makes [the trademark owner] the prevailing party, the statutory language requires more than merely prevailing.  Otherwise, every default case would warrant fees; a conclusion not justified by the statute." *BMW*,  2014 WL 5420133 at *4.

As to R&R, who began by defending the case but failed to cooperate in discovery and was subsequently defaulted, the case was also not "exceptional."  As the Court has pointed out before: "The likely outcome of ignoring demand letters is a lawsuit.  The likely outcome of ignoring the lawsuit is entry of a default judgment.  The likely outcome of a refusal to comply with a court order is, as noted, the imposition of monetary or contempt sanctions.  None of these unpleasant results can rationally be said to provide incentive to ignore judicial process.  Nor is there anything 'improper or perverse' in a conclusion that entry of a default does not compel an award of attorney's fees.  Indeed, assuming that a Defendant had no legitimate defense to offer, confessing judgment by default is far more appropriate than filing a baseless answer and litigating the suit in bad faith (both of which would more appropriately warrant an award of attorney's fees)." *Id.* at *5.  There was a prior injunction directed to another company in Nevada controlled by the Russells; however, the remedy for violation of the prior injunction is a motion for contempt, not an award of attorney's fees under this provision.

As recognized by the Eleventh Circuit: "Even if the trial court finds that the circumstances of the case are, in fact, exceptional, the decision whether to award attorney's fees is still discretionary." *Dieter v. B&H Industries of Southwest Florida Inc.,* 880 F. 2d 322, 329 (11th Cir. 1989) *citing Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 846 (11th Cir.1983).  Acting pursuant to the Supreme Court's direction to evaluate the totality of the circumstances on a case by case basis, and in view of the absence of Eleventh Circuit authority interpreting *Octane,* the Court finds an award of fees for an "exceptional" case under the Lanham Act to be inappropriate here, and therefore respectfully **RECOMMENDS** that RCI's request to award fees be **DENIED.**

RCI also claims entitlement in its Complaint to attorneys' fees pursuant to FDUPTA, §§ 501.211(2) and 501.2105, however, RCI has provided no argument in support in the memorandum of law, mentioning it only in a footnote.  Doc. 79 at 13 n. 6.  Accordingly, this request is not further considered.

## CONCLUSION

It is respectfully **RECOMMENDED** that Plaintiffs, RCI TM Corp. and RCI, LLC's Motion for Final Default Judgment pursuant to Federal Rule of Civil Procedure 55 against Defendants R&R Venture Group, LLC, Point Rental Liquidators, LLC, Excess Property Solutions, LLC, Brandon J. Cooke, be **GRANTED in part** and the Proposed Injunction (Doc. 79-1) be entered, **without including the long list of R&R's current and former employees.**

To the extent Plaintiffs seek to recover their attorneys fees, it is further **respectfully RECOMMENDED** that the Motion be **DENIED as to attorney's fees**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 27, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

-19-